**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

TINA CAMPANALE and
JACK CAMPANALE
individuals,                                          Case No.: 8:11-cv-2490-T35-EAJ

       Plaintiffs,

v.

CAPITAL ONE SERVICES, LLC,
a foreign limited liability company,

       Defendant.

_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S**
**MOTION FOR PARTIAL DISMISSAL AND SUPPORTING MEMORANDUM**

**COME NOW** Plaintiffs, Tina Campanale and Jack Campanale (hereinafter

collectively, "Plaintiffs"), by and through their undersigned counsel, and pursuant to

Local Rule 3.01(b), hereby file this Response in Opposition to Defendant's Motion for

Partial Dismissal and Supporting Memorandum, and in support thereof respectfully state

the following:

**I.**      **INTRODUCTION**

      This case arises from Defendant attempting to collect a credit card debt

(hereinafter, the "Debt") from Plaintiffs, Jack Campanale, a Georgia resident, and his

daughter, Tina Campanale, a Florida resident.  As more specifically explained below,

Defendant attempted to collect the Debt from both Jack and Tina Campanale by

continuously placing live and automatically-dialed telephone calls to Tina Campanale's

cellular telephone, despite Tina Campanale having no legitimate interest or obligation on

the Debt.  Tina Campanale, at no time, gave Defendant express consent to place

1

automatically-dialed calls to her cellular telephone.  Furthermore, Defendant's calls to Tina Campanale continued after Defendant received actual notice that Tina Campanale was represented by counsel with regard to the Debt.

Plaintiffs' Amended Complaint states a cause of action for, *inter alia*, violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, "FCCPA") because Defendant willfully, knowingly, and intentionally attempted to collect the Debt directly from Tina Campanale despite having actual notice that Tina Campanale was represented by counsel and despite having actual knowledge that Tina Campanale did not owe the Debt.  Florida law recognizes that creditors are within the purview of the FCCPA and can be held liable if they are found to have attempted to collect a consumer debt from the debtor or an alleged debtor, if they attempt to collect the Debt directly from the represented debtor or alleged debtor, or if they assert a right that does not exist in its attempt to collect the Debt.  The FCCPA affords standing to alleged debtors that are the target of collection activity despite the invalidity of the debt, such as Tina Campanale.

Plaintiffs' Amended Complaint also includes FCCPA claims asserted by Jack Campanale as a result of Defendant's aforementioned communications with Mr. Campanale's daughter, Tina Campanale, and as a result of its attempts to collect the Debt from both Jack and Tina Campanale in the State of Florida.  Precedent has held that the FCCPA applies to out-of-state residents, such as Jack Campanale, if the proscribed conduct wholly occurred within the state of Florida.

Finally, Plaintiffs' Amended Complaint states a cause of action for invasion of privacy.  Through its collection activities, Defendant intruded into Tina Campanale's

seclusion: Florida law recognizes that electronic intrusion into one's personal quarters supports an intrusion to seclusion claim.   Defendant's Motion for Partial Dismissal, therefore, should be denied.

### A.   Factual Background

Tina Campanale is a Florida resident who at all times relevant to this action lived in Pinellas County, Florida. (Amend. Compl. ¶ 2).  Jack Campanale is a Georgia resident who at all times relevant to this action lived in Gwinnett County, Georgia. *Id.* at ¶ 3. Defendant is a limited liability company that existed under the laws of Delaware that, itself and through its subsidiaries, regularly extends credit to consumers in Pinellas County, Florida.  *Id.* at ¶ 4.  Defendant called Tina Campanale on or about February 10, 2011 in an attempt to collect the Debt from Jack Campanale. *Id.* at ¶ 25.  Tina Campanale advised Defendant that she did not owe the Debt, that Jack Campanale lived in another state, and that Defendant should not call her again. *Id.*  Despite having received actual notice that Tina Campanale had nothing to do with the Debt, that Jack Campanale did not reside with Tina Campanale, and that Defendant had the wrong telephone number, Defendant placed Tina Campanale's cellular phone number into an automatic dialing system and continued to call Tina Campanale at least one hundred twenty-six times—for a total of at least one hundred twenty-seven—in an attempt to collect the Debt.  *Id.* at ¶ 36.  These calls were placed from approximately February 2011 through June 2011.  *Id.*

Tina Campanale hired legal counsel for representation regarding the Debt on or about March 4, 2011.  *Id.* at ¶ 28.  Tina Campanale's legal counsel faxed Defendant a notice of representation of Tina Campanale on March 4, 2011, providing legal counsel's contact information. *Id.* at ¶ 29.   Defendant acknowledged Tina Campanale's

representation by legal counsel with regard to the Debt on or about March 5, 2011. *Id.* at ¶ 30. When Defendant failed to cease Debt collection communications, however, Tina Campanale's legal counsel again wrote Defendant, demanding that the Debt collection calls cease. *Id.* at ¶ 34. Defendant's automatically-dialed Debt collection calls to Tina Campanale continued, however, despite Tina Campanale repeatedly demanding that Defendant cease communicating with her regarding Jack Campanale's Debt, and despite Defendant having twice received notice of representation of counsel with regard to the alleged Debt. *Id.* at ¶¶ 26–29, 31–34, 36. Defendant's continual Debt collection calls to Tina Campanale, totaling at least one hundred twenty-seven over approximately four months, cumulatively caused Tina Campanale to believe that Defendant was alleging and asserting that she owed the Debt, and that she would continue to receive automatically-dialed telephone calls from Defendant on her cellular telephone until she made payment on the Debt. *Id.* at ¶ 24.

### B.      Procedural Background

On or about November 2, 2011, Plaintiffs filed their original Verified Complaint in the United States District Court of the Middle District of Florida, Tampa Division, alleging one hundred twenty-eight state law causes of action for violations of the FCCPA, one federal cause of action for violations of the TCPA, and two common law causes of action involving invasion of privacy and declaratory and injunctive relief against Defendant.

In response, on or about December 12, 2011, Defendant filed a Motion for Partial Dismissal and to Strike and Incorporated Memorandum of Law, seeking dismissal of the

Verified Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state of cause of action upon which relief can be granted.

On or about January 26, 2012, Plaintiffs responded to Defendant's Motion for Partial Dismissal and to Strike, stating that both parties' counsel had stipulated and agreed to Defendant's Motion, provided that Plaintiffs may reassert their FCCPA claims more narrowly, Tina Campanale may reassert her claim for invasion of privacy. The Plaintiffs' claim for TCPA damages remained unaffected by the Motion to Dismiss. This court Granted Defendant's Motion for Partial Dismissal and to Strike. Plaintiffs were given twenty-one (21) days from the date of the order to file their Amended Complaint.

On or about March 15, 2012, Plaintiffs filed their Amended Complaint, alleging three state law causes of action for violations of the FCCPA, one federal cause of action for violations of the TCPA, and two common law causes of action involving invasion of privacy and declaratory and injunctive relief against Defendant.

In response, on or about April 2, 2012, Defendant filed its second Motion for Partial Dismissal and Incorporated Memorandum of Law, seeking dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state of cause of action upon which relief can be granted.

Defendant has moved to dismiss Counts I through III, generally asserting that (1) Tina Campanale is unable to bring an FCCPA claim because she is not a "debtor" as defined by the FCCPA, and (2) Jack Campanale is unable to bring an FCCPA claim because he is a Georgia resident and not a Florida consumer. Defendant has also moved to dismiss Count V, generally asserting that Tina Campanale is unable to bring an

invasion of privacy claim against Defendant because Defendant did not physically intrude upon her seclusion.

## II.   <u>LEGAL STANDARD OF REVIEW</u>

To survive a motion to dismiss, a plaintiff must provide only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007); *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974; *Iqbal*, 129 S.Ct. at 1949. Dismissal is appropriate only if the plaintiff has not "nudged [its] claims across the line from conceivable to plausible." *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974. The purpose of the complaint is to apprise the defendant of "what the claim is and the grounds upon which it rests." *Harrison v. Benchmark Elecs. Huntsville, Inc.*, 593 F.3d 1206, 1214 (11th Cir. 2010) (internal quotation omitted). A plaintiff need only do what is necessary to satisfy what the Eleventh Circuit called a "liberal pleading standard." *Id.*

"When considering a motion to dismiss [under Rule 12(b)(6)], the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted." *Holtzman v. B/E Aerospace, Inc.*, 2008 WL 214715, at *1 (S.D.Fla. Jan. 24, 2008). The court's examination is limited to the four corners of the complaint. *Keating v. City of Miami* , 598 F.3d 753, 761 (11th Cir. 2010); *Homes By Deramo, Inc. v. Mid-Continent Cas. Co.*, 661 F. Supp. 2d 1281, 1288 (M.D. Fla. 2009); *Crowell v. Morgan Stanley Dean Witter Servs., Co., Inc.*, 87 F.Supp.2d 1287 (S.D.Fla. 2000); *see also Toyota Tsusho Am., Inc. v. NSC Alliance LLC*, 2010 WL

6

556316, * 4 (S.D. Fla. Feb. 22, 2010) (arguments that rely on matters outside of the pleading are impermissible on a Motion to Dismiss under Rule 12(b)(6)); *Seoul Broad. Sys. Int'l, Inc.*, 2010 WL 2035137, *2 (M.D. Fla. May 21, 2010) ("When ruling on a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), a court must limit its consideration to the complaint, the written instruments attached to it as exhibits, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'" (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993))).

## III.   PLAINTIFFS STATE CLAIMS AGAINST DEFENDANT FOR WHICH RELIEF CAN BE GRANTED UNDER THE FCCPA AND COMMON LAW

### A.   Plaintiff Tina Campanale Has Standing to Bring an FCCPA Claim Against Defendant as an Alleged Debtor.

Plaintiffs allege in their Amended Complaint that Defendant violated the FCCPA when it excessively and continually called Tina Campanale's cellular telephone in an attempt to collect the Debt. (Amend. Compl. ¶¶ 42–55). Defendant asserts that Tina Campanale lacks standing to sue under §§ 559.72(9), (7) and (18), Fla. Stat. Section 559.72(9) generally prohibits any person from knowingly asserting a right that does not exist in its attempts to collect a consumer debt; this would include attempting to enforce a debt when the person knows the debt is not legitimate. Section 559.72(7) generally prohibits any person from engaging in conduct that could reasonably be expected to harass the debtor or any member of his or her family when the person is attempting to collect the debt. Section 559.72(18) generally prohibits a person from communicating

with a debtor in an attempt to collect a debt when the person knows the debtor is represented by counsel with regard to the debt.  Defendant suggests that because Tina Campanale asserts that she does not owe the subject debt, she lacks standing.  The plain language of the FCCPA and case law considering the same, however, provides otherwise.

The FCCPA provides that a debtor may bring a civil action against a person who commits a prohibited act (including the prohibited acts set forth in §§ 559.72(9), (7) and (18), Fla. Stat).  *See* § 559.72, Fla. Stat.  The term "debtor" or "consumer" is defined by the FCCPA as "any natural person obligated *or allegedly obligated* to pay any debt." § 559.55(2), Fla. Stat. (emphasis added).  Thus, the plain language of the definition of "debtor" or "consumer" includes obligations as well as *alleged* obligations.  Defendant's attempt to restrict the persons who may sue under the FCCPA to only those who actually owe a debt is contrary to the plain meaning of the express language of the statute.  Had the legislature intended to restrict standing to such persons, it would simply have omitted the second part of § 559.55(2), which also affords standing under the FCCPA to those who do not in fact owe a debt, but are still the target of debt collection activity.

Moreover, the existence of § 559.72(9) as an enumerated prohibited practice further demonstrates the legislature's intent to proscribe the type of collection activity which is the subject of this lawsuit.  Under this statute, creditors and debt collectors are prohibited from attempting to enforce debts which they know are invalid.  While a debt may be a legitimate account by itself, that does not mean that a creditor or debt collector has free reign to collect said account from any person they choose.  An otherwise legitimate debt is not valid when it is knowingly being collected from a party that does

not owe it.  Thus, both legitimate debts and wrongfully asserted debts may serve as the predicate "debt" required as the basis for a person to have standing under the FCCPA.

The Court of Appeal of Florida, Second District, has recently addressed and affirmed this interpretation of the FCCPA.  In *Desmond v. Accounts Receivable Management*, 72 So. 3d 179 (Fla. 2nd DCA 2011), the plaintiff appealed the lower court's holding that he could not bring a cause of action under 559.72(7) against a debt collector because he was not an actual debtor.  *Desmond* involved a situation of mistaken identity, and the debt collector had called plaintiff approximately eighteen times in an attempt to collect a debt owed by an unrelated party with the same first and last name. *Id.* at 180.  The plaintiff attempted on several occasions to call the debt collector back to advise that he was not the actual debtor, but he was unable to get passed the debt collector's automated response asking for his credit card number, which he did not have because the account did not belong to him. *Id.*  The court was clear in its reversal of the lower court:

> Under the Act, "unless the context otherwise indicates," a "debtor" means not only an actual debtor, but also "any natural person . . . allegedly obligated to pay any debt." § 559.55(2). Because the context of subsection 559.72(7) does not indicate otherwise, an alleged debtor is protected by the Act from the prohibited practices set forth in this subsection. ARM is a large corporation extensively engaged in the business of collecting debts. Any such business would reasonably understand that mistaken identities occur in the collection process. If ARM was knowingly employing methods that did not permit such an alleged debtor to return any of the eighteen telephone calls to explain that the calls were being made in error, we believe that a jury could conclude that ARM "willfully engage[d] in other conduct which can reasonably be expected to abuse or harass" such an alleged debtor. § 559.72(7).

*Id.*  The court focused on the willful conduct of the defendant, ARM, as well as the inability of the plaintiff to escape from the defendant's calls—despite his efforts to

the contrary—in its determination that the plaintiff's assertion as an alleged debtor survived the defendant's motion for summary judgment. *Id.* Willful conduct by the defendant is not required, however, as courts have also upheld standing by non debtors, as alleged debtors, even when the defendant debt collector called the non-debtor by mistake. *See Bryant v. Credit Adjustments Inc.*, 2011 U.S. Dist. LEXIS 25834 (S.D. Fla. Mar. 14, 2011) (non-debtor had standing under the FDCPA when non-debtor reasonably believed she was the person who allegedly owed the debt); *Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 612 (S.D. Fla. 2009) (using the least-sophisticated consumer standard, where there is no way for the plaintiff to know that the collection communications are not intended for her, it is reasonable for the plaintiff to think she was the person who allegedly owed the debt.).

Defendant asserts in its Motion for Partial Dismissal that "it is the factual, not the conclusory allegations that matter." (Mot. for Partial Dismissal, Dkt. 18, at 3). Curiously, Defendant cites this Court's point illustrated in *Casey v. Hall*, namely that "[a] claim is plausible where the plaintiff alleges facts that 'allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged'" in support of its position. *Casey v. Hall*, 2011 U.S. Dist. LEXIS 132268 (M.D. Fla. Nov. 16, 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009)).

The facts of this case, however, allow this Count to easily draw such an inference, especially in light of the 2nd DCA's holding in *Desmond*. Here, Plaintiffs allege in their Amended Complaint that Defendant attempted to collect the Debt from Tina Campanale through at least one hundred twenty-seven phone calls placed to her cellular telephone. Unlike the underlying facts in *Desmond*, in this case Tina Campanale actually spoke to

and advised Defendant that she had nothing to do with the Debt during Defendant's very first debt collection call to her cellular telephone: in this case, the Defendant had actual notice. Still, Defendant's Debt collection calls persisted. In fact, despite having received actual notice that Tina Campanale did not owe the Debt, Defendant intentionally, knowingly and willfully added her cellular telephone number to Defendant's automatic dialing system, which was used to call Plaintiff's cellular telephone almost every day—often multiple times a day—for approximately four months in an attempt to collect the Debt. These calls to Tina Campanale continued despite Tina Campanale having demanded that Defendant cease such Debt collection calls and despite Tina Campanale having hired legal counsel, who also twice demanded that Defendant cease such automatically-dialed Debt collection calls. Moreover, Plaintiffs alleged that Defendant placed at least one hundred twenty-six phone calls—more than seven times the amount of calls as those placed in *Desmond*—all placed with actual knowledge that Tina Campanale did not owe the Debt. Following the holding in *Desmond*, Defendant was "knowingly employing methods that did not permit" Tina Campanale to "explain that the calls were being made in error," as Defendant ignored any and all attempts Tina Campanale and her counsel made to explain to Defendant that she did not owe the Debt.

These allegations provide a sufficient factual basis for Plaintiff Tina Campanale to reasonably infer that the Defendant's conduct, taken as a whole and in context and using the least-sophisticated consumer standard, was a repeated and cumulative assertion by the Defendant that Tina Campanale owed the Debt. It is thus reasonable to believe that a jury could conclude, given Plaintiff's factual allegations that she believed Defendant, a sophisticated, technologically-advanced, multi-million dollar consumer

credit card issuer with the capability of ceasing automatically-dialed Debt collection calls to a wrong number after repeatedly receiving notice of the same, was collecting the Debt from her.  Accordingly, Tina Campanale has standing under the FCCPA.

**B.       Plaintiff Jack Campanale Has Standing to Bring an FCCPA Claim Against Defendant as an Out-of-State Resident.**

Defendant also asserts that Jack Campanale lacks standing under §§ 559.72(9) and (7), Fla. Stat. to bring an FCCPA cause of action in the State of Florida. More specifically, Defendant suggests that because Jack Campanale is a Georgia resident, he cannot bring an FCCPA claim.  Florida law provides otherwise.

Florida courts, including the 4th DCA, have supported extending Florida consumer protection laws to out-of-state residents when the violative conduct occurred within the State.   In its motion, Defendant relies on *Coastal Physician Services of Broward County, Inc. v. Ortiz*, 764 So. 2d 7 (Fla. 4th DCA 1999), to support its proposition that "[b]ecause Mr. Campanale is not a Florida consumer, he cannot state a claim for violation of the FCCPA." (Mot. for Partial Dismissal, Dkt. 18, at 5). The 4th DCA, however, has since modified and clarified its position on extending Florida consumer protection laws to out-of-state residents.   Approximately six months after *Coastal*, this same issue was again addressed in *Renaissance Cruises, Inc. v. Glassman*, 738 So. 2d 436 (Fla. 4th DCA 1999), in the context of another consumer protection statute,[1] which *Coastal* had also discussed.  In *Renaissance*, the court affirmed the trial court's certification of a nationwide class action against the defendant cruise ship for an alleged violation of FDUTPA.  *Id*. at 437.  The trial court held that, despite the fact that

---

[1] The *Renaissance* court discussed the Florida Deceptive and Unfair Trade Practices Act, §§ 501.201-.213, Fla. Stat. (hereinafter, "FDUTPA"). 738 So. 2d 436.  The FDUTPA is another Florida consumer protection act and was addressed together with the FCCPA in *Coastal*. 764 So. 2d 7.

the cruise ship sold tickets "to people both in and outside the United States, and 92% of the tickets were sold to non-Florida residents," application of FDUTPA to all individuals in the class was proper because "the common injury occurred in Florida." *Id.* at 437–38. The 4th DCA wholly affirmed the trial court's holding to apply FDUTPA to both in-state and out-of-state residents, relying on the same notion of the conduct and business occurring in Florida. *Id.* at 439–40. Although *Renaissance* was focused on FDUTPA, its analysis concerned the general applicability of Florida consumer-protection statutes, and it applies equally to the FCCPA. *See generally id.* (focusing the issue on the Defendant's connections and harmful conduct in the State of Florida, rather than any specific element of FDUTPA).

At least one other Florida DCA has altogether rejected *Coastal*. In *Millennium Communs. & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs*, 761 So. 2d 1256 (Fla. 3rd DCA 2000), the defendant cited *Coastal* in support of its argument that state consumer statutes should not be applied to transactions that occurred outside of Florida. *Id.* at 1261. The 3rd DCA, however, wholly rejected the defendant's argument and *Coastal*'s holding—pointing to the 4th DCA's own change in direction in *Renaissance*— and expressly held:

> As we read FDUTPA, it seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of this state without limitation. Therefore, where the allegations in this case reflect that the offending conduct occurred entirely within this state, we can discern no legislative intent for the Department to be precluded from taking corrective measures under FDUTPA even where those persons affected by the conduct reside outside of the state.

*Id.* at 1261–62. *Millennium*'s rationale also applies to the FCCPA. The court allowed out-of-state residents to bring FDUTPA claims because FDUTPA was concerned with

wrongful conduct within the State of Florida, regardless of where victims of the harmful conduct reside. *Id.* The FCCPA is also focused on harmful conduct within the State of Florida, and there is no legislative intent suggesting that parties can be exempt from Florida's consumer protection laws, so long as the wrongful conduct occurs within Florida. Out-of-state consumers harmed by such conduct have standing to bring a cause of action in Florida for a violation of the FCCPA.

In 2003, the 4th DCA again clarified its position on extending Florida consumer protection statutes to out-of-state residents in *Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090 (Fla. 4th DCA 2003). The *Hutson* court addressed all three previous cases: *Coastal*, *Renaissance*, and *Millennium*. *Id.* at 1093–1094. It distinguished *Coastal* from *Renaissance* by explaining that the alleged conduct in *Coastal* had "occurred both within the state of Florida and outside of the state of Florida," while in *Renaissance* "'the common injury occurred in Florida.'" *Id.* at 1094 (quoting *Renaissance*, 738 So. 2d at 438).

When *Coastal* is viewed in comparison to all of the relevant subsequent case law, the position taken by Florida courts becomes clear: when all of "the common injury occurred in Florida," out-of-state residents that are harmed by this conduct are entitled to the protections of Florida's consumer-protection statutes. The Defendant's conduct in this case fits perfectly within this description. Each and every time Defendant placed another automatically-dialed Debt collection call to Tina Campanale in Florida, she became more and more aware of Jack Campanale's ongoing financial difficulties with Defendant. Each call placed to Tina Campanale was an invasion of Jack Campanale's privacy and is the type of invasion that the FCCPA is meant to protect against. This

invasion of Jack Campanale's privacy occurred entirely within the State of Florida. Moreover, by making such calls to Tina Campanale at least one hundred twenty-six additional times after Defendant was aware that the cellular telephone number it was calling did not belong to Jack Campanale, Defendant willfully, knowingly, and intentionally continued to engage in unlawful conduct entirely within the State of Florida. Florida courts have the right and the ability to hold parties responsible for their conduct within Florida's borders, and this case is no exception.  For these reasons, Plaintiff Jack Campanale has standing to bring his FCCPA claims against Defendant.

   **C.   Defendant's Electronic Intrusion into Plaintiff Tina Campanale's Seclusion Constitutes Violative Conduct Sufficient to Support Her Invasion of Privacy Claim.**

   Defendant contends that Tina Campanale cannot bring an invasion of privacy claim against Defendant because Defendant did not physically intrude into her seclusion. Defendant further asserts that Plaintiff cannot bring an invasion of privacy claim because Defendant's conduct does not reach the level of outrageousness and extremity required under Florida law.  Florida law, including the precedent of this Court, holds otherwise.

   The Supreme Court of Florida reiterated four categories of invasion of privacy in *Allstate Ins. Co. v. Ginsberg*:

> (1) appropriation--the unauthorized use of a person's name or likeness to obtain some benefit; (2) *intrusion--physically **or electronically** intruding into one's private quarters*; (3) public disclosure of private facts--the dissemination of truthful private information which a reasonable person would find objectionable; and (4) false light in the public eye--publication of facts which place a person in a false light even though the facts themselves may not be defamatory.

863 So. 2d 156, 162 (Fla. 2003) (emphasis added).  The Court in *Ginsberg* explicitly includes electronic intrusion into one's home as a category of the tort of invasion of

privacy. *Id.*  Defendant cites this Court's opinion in *Oppenheim v. I.C. System, Inc.*, 695 F. Supp. 2d 1303 (M.D. Fla. 2010), for guidance on the issue of intrusion upon seclusion. (Mot. for Partial Dismissal, Dkt. 18, at 6).   Although *Oppenheim* does note that the invasion to privacy tort focuses on the right to be free from the public gaze, this Court nonetheless made it clear that "[u]nlike the other privacy torts, a claim for intrusion is actionable, notwithstanding the absence of publication." 695 F. Supp. 2d at 1308 (citing *Ginsberg*, 863 So. 2d at 162).

Rather than expressly hold that phone calls cannot equate to an intrusion upon seclusion, this Court assumed the plaintiff's assertion was correct in *Oppenheim*, namely that "a telephone call constitutes a physical or electronic intrusion for purposes of the Florida tort of invasion of privacy" and for the purposes of determining whether the specific calls by the defendant rose to the "requisite level of outrageous and unacceptable conduct required by Florida law to support a cause of action for invasion of privacy."  *Id.* at 1309.   Comparing Defendant's thirty-five to forty calls placed over three months in *Oppenheim* to the defendant's calls placed over a comparable time in *Kent v. Harrison*, 467 So. 2d 1114 (Fla. 2d DCA 1985), this Court found that the defendant's thirty-five to forty calls did not rise to the requisite level to constitute an intrusion to seclusion. *Oppenheim*, 695 F. Supp. 2d at 1310.

In this case, Defendant's assertion that *Oppenheim* prevents Tina Campanale from "a claim for intrusion on seclusion because [Defendant] did not physically intrude on her seclusion" is neither accurate nor sound. (*See* Mot. for Partial Dismissal, Dkt. 18, at 8). Instead, in *Oppenheim* this Court provided the groundwork for a valid intrusion to seclusion claim based on excessive phone calls to one's home, as long as those calls rose

to the "requisite level of outrageous and unacceptable conduct contemplated by the tort of invasion of privacy based on intrusion." *See* 695 F. Supp. 2d at 1310.

Just one day *after* the *Oppenheim* opinion was filed, this Court decided *Brandt v. I.C. Sys.*, 2010 U.S. Dist. LEXIS 14588 (M.D. Fla. Feb. 19, 2010), which provided much clearer guidance directly on this issue.  In denying the defendant's motion for summary judgment in a case involving an invasion of privacy claim for excessive debt collection calls, this Court confirmed the notion that excessive debt collection calls could constitute an intrusion upon the recipient's seclusion.  *See id.* at *8–12.  As in this case, the plaintiff in *Brandt* relied "on a category two intrusion analysis by virtue of Defendant's electronic intrusion by use of numerous and repetitive telephone calls to his cell telephone and, thus, into Plaintiff's private area." *Id.* at *8.  This Court provided detailed analysis of its stance on a debtor's claim for intrusion to seclusion by a debt collector's calls:

> We have found no Florida decision dealing with the undue harassment of a debtor aspect, as is the case here, of the right of privacy. However, these Florida authorities demonstrate that the right of privacy is recognized in Florida as it is in an overwhelming number of jurisdictions in this country. See Presser 'Privacy', 48 Cal.L.Rev. 383 (1960). See also Warren and Brandeis, 'The Right to Privacy', 4 Harv.L.Rev. 193 (1890) and 41 Am.Jur., Privacy §§ 4 and 5. And it has been generally held, where the right is recognized, that oppressive treatment of a debtor by a creditor in attempting to collect even a just debt may be an invasion of privacy. Biederman's of Springfield, Inc. v. Wright, Mo.1959, 322 S.W.2d 892; Bowden v. Spiegel, Inc., 1950, 96 Cal.App.2d 793, 216 P.2d 571; Bennett v. Norban, 1959, 396 Pa. 94, 151 A.2d 476, 71 A.L.R.2d 803; Housh v. Peth, 1956, 165 Ohio St. 35, 133 N.E.2d 340; Norris v. Moskin Stores, Inc., 1961, 272 Ala. 174, 132 So.2d 321; Brents v. Morgan, 1927, 221 Ky. 765, 299 S.W. 967, 55 A.L.R. 964; 77 C.J.S. Right of Privacy § 2; 41 Am.Jur., Privacy, § 30; 4 Restat., Torts, § 867; see also annotations in 55 A.L.R. 971, 91 A.L.R. 1495, 106 A.L.R. 1453, 138 A.L.R. 91, 168 A.L.R. 462; [*10] 14 A.L.R.2d 770, and 15 A.L.R.2d 158.

*Id.* at *8–10.  Noting that the number of debt collection calls in *Brandt* totaled one hundred one, this Court found a genuine issue of material fact existed as to "whether

Defendant's repeated phone calls to Plaintiff demonstrate an intent to 'abuse or harass' Plaintiff to demonstrate and evidence the tort of invasion of privacy by intrusion." *Id.* at *12.

In the instant case, Defendant placed at least one hundred twenty-seven calls to Tina Campanale's cellular telephone during a short period of approximately four months. Moreover, Defendant placed almost all of these calls despite knowing that it had no legitimate purpose for placing these automatically-dialed Debt collection calls to Tina Campanale; Defendant learned it had the incorrect number and wrong person during its very first Debt collection. Tina Campanale demanded that Defendant cease such calls, but Defendant's calls continued.

Left believing she would either have to pay the Debt or endure the continued harassment and invasion of her privacy, Tina Campanale eventually retained legal counsel in an effort to force Defendant to stop calling her. Defendant's automatically placed Debt collection calls continued, however, despite repeated demands by Tina Campanale's legal counsel for Defendant to cease placing the Debt collection calls, automatically dialed or otherwise, to Tina Campanale. Tina Campanale had a reasonable expectation of privacy when Defendant first started calling her; that expectation was heightened when Tina Campanale took several extra steps to put Defendant on notice and demanded that Defendant's unlawful conduct cease. Specifically, Tina Campanale advised Defendant that Jack Campanale could not be reached at her telephone number or address, demanded that the Defendant's Debt collection calls stop, and hired counsel that, not once but twice, also demanded that Defendant stop calling Tina Campanale in an attempt to collect the Debt. In response, Defendant remarkably put Tina Campanale's

cellular telephone number in an automatic dialing system—and allowed it to remain for four months—so that Defendant could knowingly and repeatedly call Tina Campanale's cellular telephone at least one hundred twenty-six times in an attempt to unlawfully collect the Debt.

While thirty-five to forty calls, as was the case in *Oppenheim*, may not reach the requisite level of outrageousness and unacceptable conduct to support a claim for intrusion upon seclusion, in *Brandt* this Court found one hundred one calls *did* provide the requisite number of calls to survive a motion to dismiss. 2010 U.S. Dist. LEXIS 14588. Defendant's calls to Tina Campanale total more than those calls placed in *Brandt* and more than triple the number of the calls in *Oppenheim* over a comparable length of time. Finally, and perhaps most importantly, the calls to Plaintiff in this case were knowingly and willfully made after both Plaintiff and Plaintiff's legal counsel demanded that Defendant's Debt collection calls cease, and were made using technology and a methodology more susceptible to harassing the recipient calls.[2] In short, Tina Campanale had a heightened expectation of privacy given the efforts she had undertaken to protect that privacy. Defendant's knowingly-unlawful actions shattered her privacy.

A bright line simply cannot be drawn to determine what conduct is outrageous and extreme for purposes of intrusion upon seclusion. No rational argument can be made, however, to suggest that such an excessive number of continual telephone calls, knowingly made by Defendant while ignoring Tina Campanale's repeated attempts to maintain and protect her seclusion, falls short of outrageous conduct. As such, Plaintiff

---

[2] Congress has stated the purpose of the TCPA is to protect "privacy interests . . . by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of … automatic dialers." SENATE REPORT NO. 102–178, S. REP. 102-178, 1, 1991 U.S.C.C.A.N. 1968, 1968, 1991 WL 211220, 1.

Tina Campanale has pled factual allegations in support of her invasion of privacy count that are sufficient to survive a motion to dismiss.

## IV.   <u>CONCLUSION</u>

Plaintiffs have asserted a plain, straightforward statement of facts that support a claim for which relief can be granted under the FCCPA and under common law for Tina Campanale's invasion of privacy claim.  Plaintiffs have standing to bring their Amended Complaint, which states claims of relief that are plausible on their face, supported by facts, and thus they must survive Defendant's Motion for Partial Dismissal.  As such, Defendant's Motion for Partial Dismissal should be denied.

Respectfully Submitted,

**LEAVENGOOD & NASH**

___/s/ *Ian Leavengood*_____
**Ian R. Leavengood, Esq., FBN 0010167**
**LEAD TRIAL COUNSEL**
**Christopher C. Nash, Esq., FBN 0135046**
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone:  (727) 327-3328
Fax: (727) 327-3305
Attorneys for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing *Plaintiffs' Response in Opposition to Defendant's Motion for Partial Dismissal and Supporting Memorandum* has been furnished electronically or via U.S. Mail this 20th day of April 2012 to:

      Christy T. Nash
      Counsel for Defendant
      Burr Forman
      450 S. Orange Avenue, Suite 200
      Orlando, FL 32801

                              /s/ *Ian R. Leavengood*_____
                              Attorney